UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOMAS L. | : |
| | : |
| v. | : C.A. No. 24-00195-WES |
| | : |
| MARTIN O'MALLEY, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on May 16, 2024, seeking to reverse the Decision of the Commissioner. On September 11, 2024, Plaintiff filed a Motion to Reverse or Remand the Decision of the Commissioner. (ECF No. 9). On November 1, 2024, Defendant filed a Motion to Affirm the Commissioner's Decision. (ECF No. 12). No reply brief was filed.

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 9) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 12) be GRANTED.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 20, 2019 (Tr. 367-373) which was denied initially on January 3, 2020 (Tr. 80-88) and on reconsideration on May 5, 2020. (Tr. 90-98).

Plaintiff requested an Administrative Hearing which was held on May 24, 2023 before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared. (Tr. 42-77). The ALJ issued an unfavorable decision to Plaintiff on July 5, 2023. (Tr. 13-35). On March 12, 2024, the Appeals Council notified Plaintiff that the ALJ's decision was final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by failing to build a logical bridge from the record to his RFC finding and by failing to consider medication side effects.

The Commissioner counters that the ALJ's RFC finding is adequately supported by the record and must be affirmed, and that the ALJ did not err regarding medication side effects because there was no medical support in the record for their existence.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence

favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider

psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful

activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

    A.    **Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence.  The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers).  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors.  Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements).  Shaw, 2020 WL

3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced

practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B.  Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d

143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

   D.   **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific

and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

  **E.**  **Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases,

the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

>   (4)   Treatment, other than medication, for relief of pain;
>
>   (5)   Functional restrictions; and
>
>   (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the

intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

V.     APPLICATION AND ANALYSIS

A.     The ALJ's Decision

After a hearing, the ALJ found at Step 2 that, as of the alleged onset date of June 30, 2015, Plaintiff had severe impairments of left shoulder disorder status post-surgical rotator cuff repair and degenerative disc disease of the cervical spine with stenosis and radiculopathy. (Tr. 19). He further found that as of December 1, 2018, Plaintiff had additional severe impairments of major depressive disorder and generalized anxiety disorder. Id.

The ALJ found, as of the alleged onset date of June 30, 2015, Plaintiff's RFC was for light work, except Plaintiff could occasionally crawl; climb ladders, ropes, and scaffolds; occasionally reach overhead with his upper extremities; and must avoid concentrated exposure to extreme cold, vibration, hazardous machines, heights, fumes, odors, dusts, gases, and poor ventilation. (Tr. 23). Additionally, the ALJ found that, as of December 1, 2018, Plaintiff could sustain attention and concentration to carry out only simple tasks and instructions; occasionally interact with coworkers and the general public; perform non-pressured work tasks, meaning goal-oriented tasks that do not require specific production rate such as assembly line work or

work that requires quotas; and is limited to work primarily with things and objects rather than people. Id.

Based on this RFC and testimony from the VE, the ALJ found at Step 4 that Plaintiff could not perform his past work as an overhead door installer. (Tr. 33). However, the ALJ denied benefits at Step 5 because Plaintiff's RFC did not prevent him from performing other light and unskilled work available in the economy. (Tr. 33-35).

### B.     Substantial Evidence Supports the ALJ's RFC Finding

The ALJ found that Plaintiff had a "moderate" limitation interacting with others for purposes of Steps 2 and 3 of the sequential evaluation, and then, in the RFC, he limited Plaintiff to just occasional contact with coworkers and the general public. (Tr. 22-23). This is consistent with the prior administrative medical findings of the state agency psychological consultants, (Tr. 83, 87, 92, 97), which constitute, in part, "substantial evidence to support the ALJ's determination." Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005) (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)); see also Tr. 32.

Plaintiff argues the case should be remanded because the ALJ did not assess an RFC limitation regarding his ability to interact with supervisors, as opposed to just coworkers and the public. (ECF No. 9 at p. 6). Plaintiff, however, fails to identify any basis for such a limitation in the record. And, moreover, Plaintiff admitted in his function reports that he had no problems getting along with supervisors. (Tr. 441, 458). See Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

Plaintiff's argument that the ALJ should have included some limitation dealing with supervisors is premised on the ALJ's finding that he had a "moderate" limitation interacting with others in the paragraph B criteria. (ECF No. 9 at p. 6). However, the paragraph B limitations "are not an RFC assessment but are used [only] to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. The moderate limitations the ALJ found simply do not translate into any specific RFC restriction or require a finding of disability. See Cheyenne R. v. Kijakazi, No. 21-473WES, 2022 WL 18910866, at *9 (D.R.I. Sept. 23, 2022) (collecting cases finding "'moderate' mental limitations are not per se work preclusive"); see also Dias v. Colvin, 52 F. Supp. 3d 270, 285 (D. Mass. 2014) ("[T]he paragraph B criteria, however, does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."

Furthermore, while Plaintiff argues "the ALJ failed to explain anywhere in the decision [ ] why only occasional interactions with the public and coworkers [were] appropriate," (ECF No. 9 at p. 7), this argument ignores the findings of the state agency psychological consultants, which the ALJ deemed "persuasive." (Tr. 32). The state agency consultants found the same moderate paragraph B limitation that the ALJ did, and – like the ALJ – did not find Plaintiff had an RFC limitation on dealing with supervisors. Compare Tr. 86-87, 96 with, Tr. 22. In fact, the consulting psychologists found Plaintiff was "Not Significantly Limited" in his ability to ask simple questions, request assistance, accept instructions and respond appropriately to criticism from supervisors. (Tr. 87, 97). On the other hand, they found Plaintiff was "Moderately Limited" when it came to interacting with the general public and getting along with coworkers. Id. Thus, the ALJ's RFC finding that Plaintiff could only occasionally interact with coworkers and the public but had no limitations dealing with supervisors is supported by

the consulting opinions and is also consistent with Plaintiff's representation that he had no problems getting along with supervisors. (Tr. 441, 458).

As for Plaintiff's claim that "[t]he record endorses [ ] chronic tearfulness, anxious affect, and he testifie[d] to his mental breakdowns and need to call out of his current job," (ECF No. 9 at p. 8), this is likewise not supportive of a remand. First, it does not establish any specific limitation on dealing with supervisors, and the ALJ also found Plaintiff's subjective statements were not entirely consistent with the medical and other evidence in the record, which includes the findings of the state agency consultants. (Tr. 29). Plaintiff does not challenge the ALJ's subjective symptom evaluation on appeal. Furthermore, the existence of "evidence contrary to the ALJ's findings, does not extinguish the substantial evidence supporting the ALJ's findings." Greene v. Astrue, No. 11-30084, 2012 WL 1248977, at *3 (D. Mass. April 12, 2012); see also Rhana W. v. Kijakazi, No. 2:22-cv-00004-JDL, 2022 WL 17103514, at *2 (D.Me. Nov. 22, 2022) ("That the ALJ did not ultimately draw the conclusions that the Plaintiff would have liked from [the claimant's] treatment records is not cause for remand"), R.&R. adopted, 2023 WL 156853 (D.Me. Jan. 11, 2023). In short, Plaintiff has not shown that the ALJ erred by not assessing an RFC limitation on dealing with supervisors on this record, and substantial evidence supports the ALJ's RFC finding, and, thus, it must be affirmed.

Plaintiff next contends that there is evidence, noted by the ALJ, of hand numbness yet the ALJ did not include any manipulative limitations in the RFC. (ECF No. 9 at p. 9). However, while the ALJ did mention Plaintiff's reports of numbness and tingling in the hands, (Tr. 26 citing Tr. 1315, 1323), the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence which supported

fewer limitations. (Tr. 30). That credibility determination, as previously noted, is unchallenged by Plaintiff.

Moreover, substantial evidence supports the ALJ's decision not to include any manipulative restrictions in the RFC. For example, the ALJ discussed Plaintiff's August 29, 2018 neurological exam, which showed intact sensation, normal nerve conduction studies, and no significant focal neurological deficits. (Tr. 26 citing Tr. 1128-1129). An October 22, 2019 examination of Plaintiff's left arm showed only slightly decreased strength, 4/5, but normal range of motion. (Tr. 27 citing Tr. 1149). The ALJ also noted that Plaintiff could do activities of daily living like cooking, light cleaning, shopping, and driving. (Tr. 31 citing Tr. 436-437, 454). Plaintiff also reported he had no difficulty functioning in July 2021 and he was able to go out on his son's boat more often, had more motivation, and was working on his boat. Id. citing Tr. 1238. Finally, the state agency medical consultants who were aware of Plaintiff's claimed hand numbness assessed no manipulative limitations beyond an overhead reaching restriction. (Tr. 85, 95). Accordingly, substantial evidence supports the ALJ's exclusion of manipulative limitations from the RFC. And the Court "must affirm the [Commissioner's final decision], even if the record [ ] could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan, 819 F.2d at 3.

Plaintiff next challenges the ALJ's evaluation of his headaches. (ECF No. 9 at p. 9). However, contrary to Plaintiff's argument, the ALJ did not "determine[ ] that [Plaintiff's] headaches [were] a non-severe condition." Id. at p. 10. Rather, the ALJ found Plaintiff's headaches "were in relation to [his] cervical spine disorder and radiculopathy." (Tr. 19). Thus, the ALJ "discussed [them] in relation to [those] severe impairments." Id.

Plaintiff argues "there is no indication the ALJ considered the cumulative effect of [all] Plaintiff's severe and non-severe impairments, including migraines." (ECF No. 9 at p. 11). To the contrary, the ALJ specifically stated he considered headaches in formulating the RFC. (Tr. 19). He additionally stated he considered Plaintiff's symptoms, treatment and response thereto, physical examinations, and subjective statements to support the assessed RFC. (Tr. 30). Specifically, the ALJ stated the limitation to light exertion in the RFC was "due to pain, radiculopathy, and other symptoms following [Plaintiff's] injury." Id. Further, the ALJ mentioned headaches in his RFC analysis. (Tr. 25). He also referenced "radicular symptoms" which the ALJ had linked to headaches. (Tr. 29). Finally, Plaintiff has not identified any medical evidence of record that his headaches resulted in a more limited RFC.

Finally, Plaintiff alleges the ALJ failed to explain how a restriction to light work addresses a moderate limitation in concentrating, persisting, or maintaining pace. (ECF No. 9 at p. 14). First, the RFC finding by definition "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (emphasis added). Accordingly, the ALJ's RFC finding here with its established limitations necessarily means that Plaintiff can handle a regular work schedule.

Second, as noted above, the paragraph B criteria is not the RFC. The state agency consultants found the same moderate limitations the ALJ did, and their RFC opinions are consistent with the ALJ's and, thus, constitute substantial evidence in support. Specifically, they found Plaintiff could persist at tasks in two-hour blocks over the course of a typical 8/5/40 work routine. (Tr. 87, 97). See Heather D. v. Kijakazi, No. 23-00122-LDA, 2023 WL 7385107,

at *7 (D.R.I. Nov. 8, 2023); and Christopher B. v. Kijakazi, No. 1:22-cv-00333-NT, 2023 WL 5949446, at *4 (D.Me. Sept. 13, 2023).

### C.     The ALJ Committed No Error Regarding Side Effects of Medication

To support his argument on medication side effects, Plaintiff relies exclusively on his testimony that he tried various medications when he began psychiatric treatment, and some of them caused vomiting or vivid dreams. (Tr. 61). Plaintiff also alleged in one of his Function Reports that Ibuprofen for pain caused "stomach problems." (Tr. 459). Apart from that, however, there is no indication in the medical record that Plaintiff experienced any side effects from his medications or that such side effects called for a more restrictive RFC. Thus, Plaintiff's unsupported subjective allegations at the hearing and in one of his function reports did not require the ALJ to explicitly address Plaintiff's alleged medication side effects in the decision. See De Jesus v. Sec'y of Health & Human Servs., 966 F.2d 1440 *3 (1st Cir. 1992) (unpublished opinion). Plaintiff has shown no error in this regard.

### CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (ECF No. 9) be DENIED and that Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 12) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this Report and Recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right

to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 3, 2024